**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-1379-WJM-KLM

JUSTINA A. HAND,

    Plaintiff,

v.

CENTURYLINK, as Sponsor and Administrator of the
CenturyLink Employee Benefit Plan,

    Defendant.

---

### ORDER AFFIRMING DENIAL OF BENEFITS

---

In this case brought pursuant to 29 U.S.C. § 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff Justina Hand ("Hand") challenges the decision of Defendant CenturyLink to deny her request for short-term disability ("STD") insurance benefits. (ECF No. 1.) The matter is fully briefed and ripe for decision. (*See* ECF Nos. 34–36.) For the reasons explained below, CenturyLink's denial of benefits is affirmed.

### I. BACKGROUND

In late 2013, various imaging studies (x-ray, CT, MRI) revealed significant abnormalities in Hand's cervical spine. (Administrative Record ("R.") (ECF No. 21) at 25–26, 100, 197–98.) In consultation with her orthopedic surgeon, Dr. Woosik Chung, Hand elected to undergo a major spine surgery (specifically, "anterior/posterior cervical fusion with instrumentation and decompression and fusion, C4 to T1"). (R. at 197.) The surgery was originally scheduled for February 25, 2014. (R. at 105.)

Hand was at that time employed as a "data specialist" for CenturyLink, a position in which she prepared and shipped training materials. (R. at 182.) On February 24, 2014 (the day before the scheduled surgery), Hand applied for STD benefits under the ERISA-governed CenturyLink Disability Plan ("Plan"). (R. at 23.) The Plan offers STD benefits

> when a Participant provides Objective Medical Documentation supporting that, due to a medical condition and related limitation(s), he is unable to perform the normal job duties of his regular job or any other job to which he could be assigned (with or without modification of those duties). The Objective Medical Documentation must support both the medical condition and any actual limitation(s) caused by the medical condition.

(ECF No. 35-1 § 1.15(a).)

Reed Group ("Reed"), a third party to whom CenturyLink delegated the responsibility to administer the Plan, began processing Hand's STD claim. In particular, Reed asked Dr. Chung to complete a "Health Care Provider's Statement of Disability" and to provide clinical records in support of Hand's claim. (R. at 70.)

Hand's February 25 surgery did not take place as scheduled. As she was being prepared for the surgery that morning, medical staff noticed an open sore on her right leg. (R. at 172.) The surgery was canceled and Hand visited her family practitioner, Dr. Michael Dunn, later that same day. (*Id*.) Dr. Dunn diagnosed cellulitis, a bacterial skin infection requiring a course of treatment prior to undergoing the spine surgery. (R. at 172–73.) Hand returned to work the following day, February 26, 2014. (R. at 23.)

On February 27, 2016, Dr. Chung responded to Reed's request for information with a note stating that the surgery had been canceled and that he would complete the

2

requested forms when the surgery was rescheduled. (R. at 82.)

For unexplained reasons, Hand began missing work on March 5, 2014. (*Id.*) The record does not reveal whether Hand returned to work at any time after this point.

On March 14 and 21, 2014, Reed again sought documentation from Dr. Chung. (ECF No. 35 at 6, ¶ 17.) On March 21, Dr. Chung faxed back a form on which he checked the blank for "yes" next to the question, "Is the patient able to return to work at this time?" (R. at 100.) Under the heading, "If released to Return to Work, please clarify what medically changed in condition?", Dr. Chung explained that the anticipated surgery had never happened and that Hand was scheduled for a follow-up appointment on March 24 to evaluate whether and when the surgery would take place. (*Id.*) The same form contains a section in which the provider can write in medical restrictions that should apply upon the patient's return to work. Dr. Chung wrote nothing in that section. (*Id.*)

Reed then telephoned Dr. Chung's office, seeking additional information, and received a response via voicemail from one of Dr. Chung's assistants. (R. at 25.) The assistant stated that surgery had been rescheduled for April 11, 2014, and "that Dr. Chung had not taken [Hand] off work and [he] would not complete any forms [regarding Hand's disability] until the surgery was done." (*Id.*)

By letter dated March 27, 2014, CenturyLink denied Hand's STD claim, primarily based on lack of evidence that Hand met the disability definition before her rescheduled surgery, and because Dr. Chung had not advised against returning to work. (R. at 24–25.) Hand appealed this denial by letter dated April 10, 2014, the day before her rescheduled surgery. (R. at 33.) Hand wrote in that letter that she was scheduled for

surgery the next day and would "not be able to work for at least six weeks" afterward. (*Id.*) Thus, she specifically requested STD benefits "from April 11, 2014 through the end of May." (*Id.*)

As part of her appeal, Hand submitted a form titled "Health Care Provider Statement," which Dr. Dunn filled out on April 3, 2014. (R. at 130–33.) The form in question was specifically intended for evaluation of Family Medical Leave Act ("FMLA") requests, rather than STD requests, apparently because Hand had also requested FMLA leave. (*See id.*) Dr. Dunn opined that Hand met the medical requirements of the FMLA for three reasons: (1) her surgery scheduled for April 11, (2) a period of incapacity that would exceed three days (perhaps referring to postoperative recovery), and (3) an unspecified chronic condition. (R. at 130.) Dr. Dunn further stated that Hand was "incapacitated by [her] spine condition," that the condition would last approximately "6 months," and that Hand would need to be on leave from April 11, 2014 (the rescheduled surgery date), to October 11, 2014. (R. at 131.) Elsewhere in the form, however, Dr. Dunn stated that Hand's leave would need to run from March 5, 2014 (the date she had begun to miss work), through October 11, 2014. (R. at 132.) Nonetheless, Dr. Dunn concluded by writing that the purpose of Hand's FMLA leave was "major surgery on her cervical spine 4/11/14." (R. at 133.)

The April 11 surgery did not take place as scheduled, apparently because Hand's cellulitis had not fully healed. (R. at 151–56.) As Hand herself puts it, "[t]he record does not reveal whether the proposed [surgery] ever occurred." (ECF No. 34 at 7.)

Reed asked two independent physicians to review Hand's file. One of those

physicians, an internal medicine specialist named Dr. Jose Perez, reviewed Hand's medical records generated on account of her cellulitis treatment and found "no objective evidence to support functional limitations" on Hand's ability to work. (R. at 38.) The other physician, an orthopedic specialist named Dr. Thomas Baylis, reviewed Hand's records as they pertained to her spine condition and found "no documented objective medical evidence to support functional limitations and the inability to work." (R. at 39.) Reed therefore denied Hand's appeal by letter dated July 8, 2014. (*Id*.)

Hand then filed this lawsuit. (ECF No. 1.)

## II. LEGAL STANDARD

ERISA governs employee benefit plans, including disability benefit plans. 29 U.S.C. §§ 1101 *et seq*. "When an individual covered by the plan makes a claim for benefits, the administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits. If the administrator denies the claim, the claimant may bring suit to recover the benefits due to him under the terms of his plan." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks omitted; alterations incorporated).

"[A] denial of benefits challenged under [the civil enforcement provision of ERISA, 29 U.S.C.] § 1132(a)(1)(B)[,] is to be reviewed under a de novo standard unless"—as is the case here (*see* ECF No. 35-1 §§ 3.1–3.2)—"the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In such a situation, the Court determines whether the denial of

benefits was arbitrary and capricious. *Id.*

Under the arbitrary and capricious standard, the administrator's decision need not be the only logical one or the best one; the decision will be upheld provided that it is "grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999). "The reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Nance v. Sun Life Assurance Co. of Can.*, 294 F.3d 1263, 1269 (10th Cir. 2002).[1]

### III. ANALYSIS

Hand's primary argument centers on the assumption that CenturyLink (through Reed) somehow decided that Hand was not actually suffering from the medical conditions with which she was diagnosed. (*See* ECF No. 34 at 12–16.) That assumption is incorrect. CenturyLink never disputed the objective signs and findings or any physician's diagnosis. CenturyLink instead found no objective evidence that Hand's condition limited her ability to do her job. (*See, e.g.*, R. at 39 ("The information provided reports that you have a medical condition, but does not provide sufficient objective medical information to support functional limitations and the inability to work.").) As of the initial denial (March 27, 2014), this conclusion was more than

---

[1] CenturyLink, by its own admission, funds the Plan and at least nominally administers it. (*See* ECF No. 35 at 12.) CenturyLink therefore has an inherent conflict of interest between its own desire to turn a profit and its fiduciary duty to fairly evaluate all claims. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). The effect of that conflict of interest, if any, is one factor that this Court must consider when evaluating whether CenturyLink's decision was arbitrary and capricious. *Id.* at 117. Hand, however, does not make any conflict-of-interest argument, and CenturyLink has somewhat mitigated the conflict by retaining Reed as a third-party administrator. In any event, the Court's analysis below would be the same regardless of the conflict of interest. The Court therefore will not give it any further discussion.

reasonable—indeed, it was based on the opinion of Hand's orthopedic surgeon that Hand could continue working.

The addition to the record (during the appeal process) of Dr. Dunn's FMLA statement did not render CenturyLink's decision unreasonable. The Court assumes without deciding that a doctor's opinion addressing FMLA qualifications is relevant to determining entitlement to STD benefits.[2] It is not clear whether Reed reviewed Dr. Dunn's FMLA statement during the appeal process, but even if it did not, the error (if any) would be harmless. The only reasonable interpretation of Dr. Dunn's statement was that it was contingent on the surgery scheduled for April 11, 2014, despite one conflicting reference to Hand's disability beginning on March 5 rather than April 11. That single reference to March 5 does not overwhelm the obvious import of the rest of the statement, which routinely references the need for leave in the six months following the scheduled surgery. Indeed, Hand's own April 10 appeal letter—dated a week after Dr. Dunn's April 3 FMLA statement—asserts that she is only requesting benefits beginning the next day, when she expected to undergo surgery.

Hand further contends that Drs. Perez and Baylis (Reed's independent reviewers) should have contacted Hand's "treating physicians" (presumably Drs. Dunn and Chung) "to look beyond the chart and obtain a complete and accurate expression of the treating physicians' opinions regarding Hand's disability." (ECF No. 34 at 16.) Hand cites no authority imposing such an obligation, nor does she point to anything in the record showing any ambiguity regarding Dr. Dunn's or Dr. Chung's opinions. This

---

[2] No party provides any helpful authority in this regard.

7

argument therefore lacks merit.

Finally, Hand claims that Drs. Perez and Baylis should have consulted a vocational expert about the effect, if any, of Hand's objectively diagnosed condition on her ability to perform her normal job functions.  Hand again cites no authority requiring such a consultation, nor any authority that it would be unreasonable for CenturyLink to rely on the conclusions of a physician who did not consult a vocational expert.

Thus, CenturyLink's denial of STD benefits was not arbitrary and capricious.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. CenturyLink's decision denying Hand's claim for short-term disability benefits is AFFIRMED.

2. The Clerk shall enter final judgment in favor of CenturyLink and against Hand, and shall terminate this case; and

3. The parties shall bear their own costs.

Dated this 30th day of December, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge